## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BREAKING GLASS PICTURES,<br><br>       Plaintiff,<br><br>v.<br><br>SWARM SHARING HASH FILE<br>SHA1:<br>A0AD891DA8DF4D87DDC343A3742DCF610FEE7B6D;<br>AND DOES 1 through 5,<br><br>       Defendants. | CIVIL ACTION NO.:<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff, Breaking Glass Pictures (hereinafter "Plaintiff') files this Complaint against multiple unknown Defendants and alleges as follows:

## NATURE OF THE CASE

1.      Plaintiff is the registered owner of the copyright to a motion picture entitled "6 Degrees of Hell" (hereinafter the "Motion Picture").  **THE MOTION PICTURE IS NOT A PORNOGRAPHIC FILM.**  A true and correct copy of the Certificate of Registration for the Motion Picture is attached hereto as <u>Exhibit A.</u>

2.      Defendants, whose true identities are currently unknown, acted in a collective and interdependent manner in the unlawful reproduction and distribution of the Motion Picture using the "BitTorrent" file transfer protocol.

3.      Each time a Defendant unlawfully distributes a copy of the copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy of the Motion Picture to others without degradation in sound or picture

quality. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture

can result in the nearly instantaneous worldwide distribution of that single copy to a limitless

number of people. In this case, each Defendant's copyright infringement built upon the prior

infringements, in a cascade of infringement.

4.      Plaintiff seeks redress for Defendants' rampant infringement of its exclusive rights

in the Motion Picture, and for injunctive relief to stop Defendants from continuing to infringe

upon Plaintiff's copyrighted work.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's claims for copyright

infringement and related claims pursuant to 17 U.S.C. §§ 101, et seq., and 28 U.S.C. §§ 1331 and

1338(a).

6.      Defendants reside in, solicit, transact, and/or are doing business within the

Commonwealth of Massachusetts; and they have committed unlawful and tortious acts both

within and outside the Commonwealth of Massachusetts with the full knowledge that their acts

would cause injury in the Commonwealth. As such, Defendants have sufficient contacts with this

judicial district to permit the Court's exercise of personal jurisdiction over each.

7.      Plaintiff's claims arise out of Defendants' conduct which gives rise to personal

jurisdiction over Defendants.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a).

Although the true identities of each and every member of the collective formed by Defendants

are unknown to Plaintiff at this time, on information and belief, each Defendant may be found in

this District and/or a substantial part of the infringing acts complained of herein occurred in this

District, and Defendants can reasonably anticipate being haled into court in this District.

## THE PARTIES

### I.    The Plaintiff

9.      Breaking Glass Pictures is a limited liability company with a place of business located at 133 N. 4th Street, Philadelphia, Pennsylvania 19106.

### II.    The Defendants

10.      The true names and capacities, whether individual, corporate, associate or otherwise, of Doe Defendants 1 through 5 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff knows each Defendant only by the Internet Protocol ("IP") address assigned to the Internet Service Provider ("ISP") account through which each Defendant accessed the Internet on the date and at the time at which the infringing activity of each Defendant took place. The IP address used by each Defendant thus far identified, together with the date and time at which his or her infringing activity was observed, is listed below. Plaintiff intends to subpoena the ISPs that issued the IP addresses and/or take other discovery in order to learn the identities of the account holders for the below IP addresses.

11.      The Defendants are a group of BitTorrent users or peers, known as a "swarm," whose computers are collectively interconnected for the purpose of sharing of a particular unique file. The particular file that a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency). The hash in this case is identified as:

SHA1: A0AD891DA8DF4D87DDC343A3742DCF610FEE7B6D (hereinafter the "Shared Hash").

12.      Plaintiff is informed and believes, and based thereon alleges, that each Defendant was and is the agent of the other Defendants, acting within the purpose and scope of said agency.

Plaintiff is further informed and believes, and based thereon alleges, that each Defendant authorized and ratified the conduct herein alleged of each of the other Defendants.

13.     Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant. Plaintiff will seek leave to amend this Complaint to include Defendants' proper names and capacities when they have been determined. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this action as defendants. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants participated in, and is responsible for, the acts described in this Complaint and the damage resulting therefrom.

14.     Plaintiff alleges on information and belief that each Defendant named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged, and is liable to Plaintiff for the damages and relief sought herein.

15.     Each of the Defendants engaged in their copyright infringement scheme together. Defendants all shared and republished the Motion Picture, and thus collectively participated in the same swarm sharing the Shared Hash.

16.     The swarm in this case is not an actual entity, but rather is made up of numerous individuals, acting in concert with each other, to achieve the common goal of infringing upon Plaintiff's copyrights both by illegally duplicating and illegally distributing the Motion Picture. While other members of the swarm may be sued in other jurisdictions, each of the IP addresses noted in this Complaint has specifically been traced to this jurisdiction.

A.     **Defendant Doe 1**

17.     Defendant Doe 1 is unknown, but used the following IP address: 174.63.98.107.

18.     Doe 1 used this IP address to illegally copy and illegally republish and distribute copies of the Motion Picture, through the use of the Shared Hash, to an unknown number of other individuals over the Internet.

19.     The infringing activity took place on December 29, 2012 at 12:43:02 a.m.

**B.     <u>Defendant Doe 2</u>**

20.     Defendant Doe 2 is unknown, but used the following IP address: 76.19.198.28.

21.     Doe 2 used this IP address to illegally copy and illegally republish and distribute copies of the Motion Picture, through the use of the Shared Hash, to an unknown number of other individuals over the Internet.

22.     The infringing activity took place on January 5, 2012 at 6:07:37 p.m.

**C.     <u>Defendant Doe 3</u>**

23.     Defendant Doe 3 is unknown, but used the following IP address: 74.92.26.210.

24.     Doe 3 used this IP address to illegally copy and illegally republish and distribute copies of the Motion Picture, through the use of the Shared Hash, to an unknown number of other individuals over the Internet.

25.     The infringing activity took place on January 9, 2013 at 9:27:35 p.m.

**D.     <u>Defendant Doe 4</u>**

26.     Defendant Doe 4 is unknown, but used the following IP address: 71.83.51.183.

27.     Doe 4 used this IP address to illegally copy and illegally republish and distribute copies of the Motion Picture, through the use of the Shared Hash, to an unknown number of other individuals over the Internet.

28.     The infringing activity took place on January 12, 2013 at 8:28:33 p.m.

**E.      Defendant Doe 5**

29.     Defendant Doe 5 is unknown, but used the following IP address: 50.136.87.145.

30.     Doe 5 used this IP address to illegally copy and illegally republish and distribute copies of the Motion Picture, through the use of the Shared Hash, to an unknown number of other individuals over the Internet.

31.     The infringing activity took place on January 21, 2013 at 2:52:27 p.m.

**III.      Copyright And BitTorent**

32.     BitTorrent is a peer-to-peer (hereinafter "P2P") file-sharing protocol used for distributing and sharing data on the Internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a "swarm," or group of hosts, to download and upload from each other simultaneously. The process works as follows:

33.     First, a user downloads a torrent file onto his or her computer. These torrent files do not contain audio or visual media, but instruct the user's BitTorrent program where to go and how to obtain the desired content. The torrent file contains a unique "hash code" known as the SHA-1 hash — which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file also contains a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique hash code,

as well as specifics about the media file. The media file could be any large file, including a digital motion picture or a music file.

34.    Because BitTorrent client software generally lacks the ability to search for torrents, end-users use search engines or other websites that contain indices of torrent files to locate torrent files being made available by other BitTorrent users.

35.    Second, the user opens the torrent file with a BitTorrent program, also known as a BitTorrent "client" application, which is capable of reading the roadmap encoded in the torrent file. This client program, after reading the roadmap, connects "uploaders" of the file (i.e., individuals that are distributing the content) with "downloaders" of the file (i.e., individuals that are copying the content). During this process, the BitTorrent client reaches out to one or more "trackers" that are identified on the roadmap. A tracker is an Internet server application that records the IP addresses associated with users who are currently sharing any number of media files identified by their unique hash values and then directs a BitTorrent user's computer to other users who have the particular file each user is seeking to download.

36.    Each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired media file for download. The downloading user's BitTorrent software then begins downloading the media file by communicating with the BitTorrent client programs running on the uploading users' computers.

37.    The life cycle of a file shared using BitTorrent begins with just one individual — the initial propagator, sometimes called a "seed" user or "seeder." The initial propagator intentionally elects to share a file with a torrent swarm. The original file, in this case, contains Plaintiff's entire copyrighted Motion Picture.

38.     Other members of the swarm connect to the seed to download the file, wherein the download creates an exact digital copy of the media file on the downloaders' computers. As additional users request the same file, he or she joins the collective swarm, and each receives pieces of the file from every other person in the swarm who have already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one swarm member, so that together all pieces downloaded comprise the entire media file when reassembled, the initial propagator may leave the swarm, and the remaining members can still obtain a full copy of the media file by exchanging the pieces of the media file that each one has.

39.     Files downloaded using the aforementioned method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete media file. Thus, the effect of this technology is to make every downloader of the content also an uploader. This means that every user who has a copy of the infringing media file in a swarm may also be a source for later downloaders of that media file.

40.     The distributive nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective of peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the BitTorrent protocol, any seed peer that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm. Because of the nature of the collective swarm, every infringer is — and by necessity all infringers together are —

simultaneously both stealing the Plaintiff's copyrighted Motion Picture and illegally redistributing it.

41.     Plaintiff has verified that each Defendant named herein actually published the Motion Picture via BitTorrent. At various times, Plaintiff discovered and documented the Motion Picture being publicly distributed by Defendants through the BitTorrent network.

42.     Plaintiff's Motion Picture is easily discernable as a professional work. Plaintiff created the work using actors, directors, cinematographers, camera crews, production designers and editors.

43.     Each legitimate copy of the Motion Picture is marked with a copyright notice, a warning that unauthorized copying is illegal and will be prosecuted.

44.     Defendants, without authorization, copied and distributed the work owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

## IV.     Defendants Are Members Of A Single BitTorrent Swarm

45.     Defendants are peer members who have all collectively participated in the same P2P network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in the Motion Picture without permission.

46.     Defendants initiated their infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to reach such files.

47.     The unique file identifier generated by an algorithm developed by the National Security Agency associated with the instant action is the SHA1: A0AD891DA8DF4D87DDC343A3742DCF610FEE7B6D Hash.  Each Defendant is a

member of the same collective swarm associated with the Shared Hash, and each acted collectively, and in concert, in effectuating the illegal and unauthorized sharing of the Motion Picture.

48.     Each Defendant owns or otherwise had or has control of a different computer collectively connected to the Internet that contained — or possibly still contains — a torrent file identifying the Motion Picture. Each computer also contained or still contains the Motion Picture, which was downloaded using the information encoded in that torrent file.

49.     Due to the fact that some IP addresses are "dynamic" (that is, a single computer could be assigned a different IP address on different dates or times), or that persons have access to and often use more than one computer, it is possible that various Defendants named in this Complaint actually could be the same person.

50.     All Defendants republished and duplicated the Motion Picture. Moreover, as members of the same swarm, Defendants republished, duplicated, and replicated the precise same copy and same Shared Hash version of the Motion Picture, thus demonstrating that all of Defendants shared and replicated the Motion Picture with one another, thus linking them all together in a vast conspiracy and concerted effort to deprive Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act.

51.     The Defendant peers each utilized a torrent file to upload and download Plaintiff's copyrighted Motion Picture without permission through use of the BitTorrent file transfer protocol.

52.     Each Defendant peer, consistent with using a BitTorrent P2P network, obtained a torrent file containing sufficient information to locate and download a copy of the Motion Picture.

53.     After each Defendant peer downloaded a torrent containing information concerning sources of the copyrighted Motion Picture, each Defendant used that information to connect to other Defendants for the purpose of sharing the Motion Picture with other members of the BitTorrent collective network.

54.     The copyrighted Motion Picture was then uploaded and downloaded through a single swarm collective among the various Defendants acting in concert — all members sharing the same exact file, using the same exact hash identifier.

55.     Once connected to the BitTorrent swarm sharing Plaintiff's copyrighted Motion Picture, the Defendant peers shared the Motion Picture between each other by trading small portions of the file containing a digital copy of the Motion Picture. More precisely, the BitTorrent network divided the Motion Picture into many small pieces and distributed these pieces throughout the swarm until each of the collectively participating Defendants in the swarm had a partial or complete infringing copy of the Motion Picture.

92.     Based on this information, Defendants all participated in the same collective swarm, infringing upon Plaintiff's exclusive rights in the Motion Picture by uploading (distributing) and downloading (reproducing) Plaintiff's copyrighted Motion Picture, and through their actions each Defendant assisted each and every other Defendant, each member of the P2P network swarm, by illegally downloading Plaintiff's copyrighted Motion Picture.

## <u>COUNT I</u>
### (Copyright Infringement 17 U.S.C. § 501)

93.     Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

94.     Plaintiff is, and at all relevant times has been, the copyright owner of the Motion Picture infringed upon by all Defendants. The copyright to the Motion Picture is protected under Title 17 of the United States Code.

95.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce and distribute the Motion Picture — rights upon which Defendants maliciously and intentionally infringed.

96.     Plaintiff is informed and believes, and on that basis alleges, that Defendants have used, and continue to use, the BitTorrent file transfer protocol to make infringing copies of the Motion Picture, to distribute the Motion Picture to the public, and/or make the Motion Picture available for distribution to others, including other BitTorrent users. All such uses were without any valid permission, consent or other authorization from or by Plaintiff. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.  Defendants' actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

97.     Plaintiff is informed and believes, and on that basis alleges, that the foregoing acts of infringement were willful and intentional.

98.     As a result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504(c), and to its attorney fees pursuant to 17 U.S.C. § 505.

99.     The conduct of Defendants is causing and will continue to cause Plaintiff great and irreparable injury. Such harm will continue unless Defendants are enjoined from such conduct by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing

Plaintiff's copyrights, and ordering Defendants to destroy all copies of the Motion Picture made in violation of Plaintiff's exclusive rights under the Copyright Act.

## COUNT II
### (Contributory Copyright Infringement)

100.     The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

101.     "Torrenting" is similar conceptually to constructing a puzzle, in that a file is deconstructed into tiny pieces and then the pieces are uploaded and distributed among one or more peers. When an infringer seeks to download the original file, he or she downloads a torrent file containing information as to where each of the distributed pieces of the file can be found and how to contact each peer who has uploaded a piece of the file. Each torrent file that contains information about the same original file contains the same "hash" value. This torrent file is capable of locating the unique corresponding pieces that make up the original file (and copies of the original file). Once all of the pieces are located and downloaded they are reconstructed back into the original order completing the entire original copyrighted file, much like one would assemble the pieces of a puzzle to complete the final image.

102.     When, as in this case, each user possesses the same infringing work with the same hash value, it is because each infringer possesses an exact digital copy, containing the exact bits unique to that file, of the original work. In essence, although hundreds of users may be uploading the copyrighted work, each will only receive the exact parts of a singular upload, not a compilation of available pieces from various uploads.

103.     Here, each Defendant published the precise same Shared Hash to the BitTorrent network.

104.    Each Defendant downloaded, uploaded and distributed the Motion Picture to each other, in concert with one another and through the use of the exact same protocol.

105.    Because each Defendant was involved in uploading and downloading the Motion Picture, using the same hash value, in the same general timeframe, the occurrence of events at issue in this Complaint is common to all Defendants, making them properly joined in this action.

106.    BitTorrent users upload infringing works in concert in order to gain access to and gain the ability to download other infringing, copyrighted works.

107.    As each of the people who illegally downloaded the Motion Picture accessed the Shared Hash, they derived portions of their illegal replication of the file from multiple persons, including the Defendants in this action.

108.    The Defendants knew of the infringement, were conscious of their own infringement, and were conscious of the fact that multiple other persons likely derivatively downloaded the file containing the Motion Picture.

109.    The infringement by other BitTorrent users could not have occurred but for Defendants' material contribution to the infringing activities of the other users in uploading the Motion Picture. As such, Defendants' participation in the infringing activities of others is substantial.

110.    Defendants each profited from their contributory infringement by obtaining an illicit copy of the Motion Picture without paying for it.

## COUNT III
### (Civil Conspiracy)

111.    The Plaintiff re-alleges and incorporates by reference the allegations contained in each paragraph above.

112.    Defendants entered into various agreements to use the BitTorrent file transfer protocol to make copies of the Motion Picture, distribute the Motion Picture to the public and/or make the Motion Picture available for distribution to others in violation of the Copyright Act.

113.    As a result of Defendants conspiracies, Plaintiff has been injured and suffered damages.

**WHEREFORE,** Plaintiff, Breaking Glass Pictures prays that this Court:

(a)    Enter a judgment in favor of Plaintiff on all Counts of this Complaint;

(b)    Award, at Plaintiff's election, all actual damages or statutory damages pursuant to 17 U.S.C. § 504, resulting from Defendants' conduct, as described above;

(c)    Enter a permanent injunction: (i) enjoining each Defendant from directly or indirectly infringing upon Plaintiff's copyrights in the Motion Picture or any other works, whether now in existence or later created, that are owned or controlled by Plaintiff (or any parent, subsidiary, or affiliate of Plaintiff), including without limitation, by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's works, to distribute (i.e., upload) any of Plaintiff's works, or to make any of Plaintiff's works available for distribution to the public, except pursuant to a lawful license or with Plaintiff's express consent; and (ii) ordering each Defendant to destroy all copies of 6 Degrees of Hell that he or she has downloaded onto any computer hard drive or server and destroy all copies of those downloaded copies transferred onto any physical medium or device in each Defendant's possession, custody, or control;

(d)    Award Plaintiff all costs, expenses and attorneys' fees incurred in connection with this matter; and

(e)    Award Plaintiff such other and further relief that justice so requires.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Dated:    March 29, 2013                    Respectfully submitted,

                                        **BREAKING GLASS PICTURES**
                                        **By its attorneys**

                                        */s/ Alexandra Capachietti*
                                        Shepard Davidson, Esq. (BBO#557082)
                                        sdavidson@burnslev.com
                                        Alexandra Capachietti, Esq. (BBO#666765)
                                        acapachietti@burnslev.com

Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on March 29, 2013.

Dated:  March 29, 2013                                    /s/ *Alexandra Capachietti*
                                                          Alexandra Capachietti